UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
JOSE RAFAEL URENA,

                        Plaintiff,          **MEMORANDUM AND ORDER**
                                            09-CV-1107(KAM) (LB)

        -against-


YAN WOLFSON, M.D., NEW YORK DOWNTOWN
HOSPITAL; ROBERT BEAUDOUIN, M.D.,
and BOP METROPOLITAN DETENTION
CENTER,

                        Defendants.
----------------------------------X

**MATSUMOTO, United States District Judge:**

        On December 9, 2008, Jose Urena ("plaintiff")

commenced this *pro se* action against defendants Robert

Beaudouin, M.D. ("Beaudouin"), United States Bureau of Prisons

Metropolitan Detention Center, ("MDC," together with Beaudouin,

"Federal Defendants"), Yan Wolfson, M.D. ("Wolfson"), and New

York Downtown Hospital ("NYDH," together with Wolfson, "Non-

Federal Defendants"), alleging constitutional violations

pursuant to 42 U.S.C. § 1983, *Bivens v. Six Unknown Named*

*Agents*, 403 U.S. 388 (1971) ("Bivens"), the Federal Tort Claims

Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, and New York state

negligence and medical malpractice statutes.  Plaintiff

allegedly sustained injuries to his bladder, scrotum, and

abdomen while incarcerated at the MDC in 2006.  This case was

1

initially filed in the Southern District of New York and transferred to this court by order dated February 23, 2009.

Pending before the court are: (1) defendant NYDH's motion to dismiss and motion for summary judgment; (2) defendant Wolfson's motion to dismiss; and (3) defendant Beaudouin's and the MDC's motion to dismiss and motion for summary judgment. For the reasons set forth below, NYDH's and Wolfson's motions to dismiss and for summary judgment are granted in part and denied in part; the MDC's motion for summary judgment is granted; and Beaudouin's motion for summary judgment is granted in part and denied in part.

## BACKGROUND

### I. Procedural History

Plaintiff commenced this action *pro se* on December 9, 2008, against defendants Beaudouin, MDC, Wolfson, and NYDH. Liberally construed, the amended complaint[1] alleges that defendants were negligent, committed medical malpractice, and were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

On June 3, 2009, Magistrate Judge Bloom held an initial telephone conference with the parties. (ECF No. 22, Transcript of Telephone Conference ("Tr.").) During the course

---

[1] Unless otherwise indicated, references herein are to the amended complaint, filed on November 2, 2009. (ECF No. 45, Amend. Compl.)

of the call, plaintiff advised that he suffered his injuries in 2006. Judge Bloom informed plaintiff, *inter alia,* that his claims against the federal defendants would be governed by the FTCA and were barred by the applicable two-year statute of limitations. (*See* ECF No. 22, Tr. at 7.) Judge Bloom did not specifically state that plaintiff's state law tort claims could proceed against the non-federal defendants.

Plaintiff filed an amended complaint on November 2, 2009. (ECF No. 45, Amend. Compl.) Discovery followed. Defendants filed the pending motions between March 5 and March 26, 2010. Defendant MDC moves to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), arguing first, that a defendant who acts under the color of federal, rather than state, law is not proper defendant in a § 1983 action; and second, that sovereign immunity protects a federal agency from liability under *Bivens*. Defendant Beaudouin moves for summary judgment pursuant to Fed. R. Civ. P. 56 on the ground that plaintiff failed to present evidence to create an issue of fact as to whether Beaudouin was personally involved in a violation of plaintiff's constitutional rights. Both federal defendants also move for summary judgment on the ground that the court lacks subject matter jurisdiction because plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e)(a).

Defendants NYDH and Wolfson move to dismiss the § 1983
claims for failure to state a claim pursuant to Fed. R. Civ. P.
12(b)(6) and/or for lack of subject matter jurisdiction pursuant
to Fed. R. Civ. P. 12(b)(1) on the ground that they are not
state or federal actors.  In the alternative, defendant NYDH
moves for summary judgment under Fed. R. Civ. P. 56.

## II.  Undisputed Material Facts[2]

Unless otherwise indicated, the undisputed material
facts, as set forth in the current record and the parties' Rule
56.1 Statements, are as follows.  Plaintiff is an inmate who was
housed at the MDC from July 6, 2005 to March 21, 2007.  (ECF No.
67, Defendants Robert Beaudouin and Metropolitan Detention
Center's Rule 56.1 Statement of Material Facts as to Which No
Genuine Issue Remains to be Tried ("Fed. Defs. R. 56.1 Stmt.")
at ¶ 1.)  NYDH is a private medical institution doing business
as a private not-for-profit corporation.  (NYDH Local Rule 56.1
Statement of Facts ("NYDH R. 56.1 Stmt.") at ¶ 1.)

---

[2] As set forth in Local Civil Rule 56.1(c), "[e]ach numbered paragraph
in the statement of material facts set forth in the statement required to be
served by the moving party will be deemed admitted for purposes of the motion
unless specifically controverted by a correspondingly numbered paragraph in
the statement required to be served by the opposing party."  L. Civ. R.
56.1(c).  In addition, Local Civil Rule 56.2 requires that notice be sent to
*pro se* parties by the party moving for summary judgment.  Here, defendants
complied with Rules 56.1 and 56.2 by serving statements and notice on
plaintiff.  Plaintiff did not submit a correspondingly numbered document
responding to defendants' 56.1 statements.  Although the statements in
defendants' Rule 56.1 statements are technically deemed admitted for the
purposes of this motion, the court has liberally construed plaintiff's
opposition papers and the evidence in the record and finds that several
issues of disputed material fact remain.

Defendant complained of pain and other bladder-related symptoms to medical personnel at the MDC, including defendant Beaudouin, between at least May 12, 2006 and November 12, 2006. (Exhibit L to Declaration of Alexandra Fridel in Support of NYDH's Motion for Summary Judgment ("Fridel Decl.") at B000000053, B000000041.) On September 21 and October 5, 2006, plaintiff was brought to Dr. Wolfson's office at NYDH by the Bureau of Prisons for urology examinations, including a cystoscopy, after which a diagnosis of bladder cancer was reached. (ECF No. 80, Ex. 2, L. Civ. R. 56.1(a) Statement of Undisputed Facts in Support of Motion to Dismiss on Behalf of Yan Wolfson, M.D. ("Wolfson R. 56.1 Stmt.") at ¶ 2; ECF No. 82, Affidavit of Yan Wolfson, M.D. ("Wolfson Aff.") at 7.) On November 2, 2006, Dr. Wolfson performed a transurethral resection of bladder tumors on plaintiff at the NYDH. (Wolfson R. 56.1 Stmt. at ¶ 3; NYDH R. 56.1 Stmt. at ¶¶ 4-5.) On November 3, 2006, plaintiff returned to the MDC after his first surgery. (Fed. Defs. R. 56.1 Stmt. at ¶ 3.) He was found by Dr. Wolfson to be in stable condition and fit for confinement. (NYDH R. 56.1 Stmt. at ¶ 7.) On November 13, 2006, plaintiff was transported from the MDC to the emergency room at NYDH after he continued to complain of pelvic pain and inability to urinate. (*Id.* at ¶ 8.) Plaintiff was diagnosed with a bladder perforation and immediate surgical repair was advised. (*Id.* at ¶ 9.) Plaintiff refused

surgical repair on November 13, 2006 and did not give consent to surgical repair until November 17, 2006. (*Id.* at ¶ 10.) On November 17, 2006, Dr. Wolfson performed a second surgery on plaintiff to repair his bladder perforation. (Wolfson R. 56.1 Stmt. at ¶ 4; Fed. Defs. R. 56.1 Stmt. at ¶ 4; NYDH R. 56.1 Stmt. at ¶ 11.) Plaintiff had an unremarkable post operative course at NYDH and was discharged in stable condition on November 22, 2006, with no activity or dietary restrictions. (NYDH R. 56.1 Stmt. at ¶ 12.)

Upon admission to a BOP facility, all inmates are given an Admission and Orientation ("A&O") booklet that advises them of the policies and procedures of both the BOP and of the individual institution. (Fed. Defs. R. 56.1 Stmt. at ¶ 8.) The A&O Booklet sets forth in detail the Administrative Remedy process and advises inmates of the proper method to start the Administrative process. (*Id.*) BOP's computerized database, SENTRY, did not indicate that plaintiff filed any claims under the BOP's Administrative Remedy process while he was housed at the MDC, between July 6, 2005 until March 21, 2007. (*Id.*) Plaintiff's original complaint, however, attached forms entitled "Central Office Administrative Remedy Appeal" and "Regional Administrative Remedy Appeal." (ECF No. 4-2, Compl., at 8, 9.) Moreover, plaintiff asserts in his opposition to the federal

defendants' motion that he filed claims with the BOP. (*See* ECF No. 62 at 4; ECF No. 87 at 2.)

## DISCUSSION

### I.  **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) Standard**

Under Fed. R. Civ. P. 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.").  In reviewing a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).  A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.  *Makarova*, 201 F.3d at 113.  In deciding a Rule 12(b)(1) motion to dismiss, the court may rely on and refer to evidence outside the pleadings.  *J.S.*, 386 F.3d at 110.

### II.  **Summary Judgment Standard**

A court may grant summary judgment only "if the pleadings, the discovery and disclosure materials on file, and

any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding a motion for summary judgment, the court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court must construe the facts in the light most favorable to the nonmoving party and all reasonable inferences and ambiguities must be resolved against the moving party. *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001).

Nevertheless, the nonmoving party cannot rest "merely on allegations or denials" but must instead "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also National Westminster Bank USA v. Ross*, 676 F. Supp. 48, 51 (S.D.N.Y. 1987) ("Speculation, conclusory allegations, and mere denials are not enough to raise genuine issues of fact."); *Harlen Assocs. v. Incorporated Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) ("[M]ere speculation and conjecture is [sic] insufficient to preclude the granting of the motion.").

Nor can the nonmoving party rest only on the pleadings. *Celotex*, 477 U.S. at 324 ("Rule 56(e) requires the nonmoving party to go beyond the pleadings."); *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). Instead, each statement of material fact by the movant or opponent must be followed by citation to evidence which would be admissible, as required by Fed. R. Civ. P. 56(e) and Local Civil Rule 56.1(d). Moreover, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

### III. **Defendant MDC**

Defendant MDC argues that plaintiff's claims against it must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. (*See* ECF No. 66, Memorandum in Support of Defendants Robert Beaudouin & The Metropolitan Detention Center's Motion to Dismiss, Pursuant to

Fed. R. Civ. P. 12(h)(3), and for Summary Judgment Pursuant to Fed. R. Civ. P. 56 ("Fed. Defs. Mem.") at 5-8.) Defendant MDC first argues that it is a federal agency and § 1983 only provides relief against defendants who act under the color of state law. (*Id.* at 6-8.) Defendant MDC further contends that to the extent that the complaint is construed as alleging constitutional tort claims under *Bivens*, it should be dismissed because sovereign immunity protects federal agencies and instrumentalities. (*Id.*) In response, plaintiff argues that "Mr. Urena believes that this Honorable Court has subject matter jurisdiction pursuant to 28 USC § 1331." (*See* ECF No. 87 at 1.) For the reasons discussed below, the claims against defendant MDC must be and are dismissed for lack of subject matter jurisdiction.

The Supreme Court has determined that a suit filed under § 1983 cannot proceed against a federal defendant. *See Wheeldin v. Wheeler*, 373 U.S. 647, 650 n.2 (1963) (holding that federal officers are not liable under § 1983). MDC is a federal entity and thus is not a proper defendant to a § 1983 suit.

Further, although a party may allege a *Bivens* claim against the federal government because an action against a federal agency is deemed brought against the United States, such suits are barred under the doctrine of sovereign immunity, unless immunity is waived. *See FDIC v. Meyer*, 510 U.S. 471, 478

10

(1994).  The waiver of sovereign immunity "cannot be implied but must be unequivocally expressed."  *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. King*, 395 U.S. 1, 4 (1969)).  A suit against the MDC is deemed to be brought against the United States, but because neither defendant MDC nor the United States has explicitly waived its sovereign immunity, a *Bivens* suit against both is barred.  Accordingly, the court grants summary judgment in favor of the MDC to the extent that plaintiff's complaint may be construed to allege claims under *Bivens* and § 1983.

## IV.  Defendant Beaudouin

### a. Exhaustion of Administrative Remedies under the PLRA

Defendant Beaudouin first argues that he is entitled to summary judgment pursuant to Fed. R. Civ. P. 56 because plaintiff failed to exhaust his administrative remedies under the PLRA.  Beaudouin argues that the PLRA exhaustion requirement applies to "any suit challenging prison conditions" and that "plaintiff never filed a single administrative complaint during the approximately twenty-month period he was housed at the MDC." (ECF No. 66, Fed. Defs. Mem., at 12, 14.)

In opposition to Beaudouin's motion for summary judgment and the BOP's declaration that plaintiff failed to exhaust his administrative remedies, plaintiff sets forth

several arguments.  In his "Response in Opposition to
Defendants' Letters and Request that the Defendants' [sic]
Provide the Requested Interrogatories and Documents Pursuant to
Fed. R. Civ. Pro. 37(a)," plaintiff states that he "was not
aware that he had to file the administrative procedure and
agrees that he failed to do this."  (ECF No. 57 at 2.)   In
apparent contradiction of this statement, plaintiff submits in
opposition to the federal defendants' motion that he "sent a BP-
229(13) and a BP-230(13) to the Regional office and Central
Office . . . thereafter; not fully understanding the
administrative procedure coupled with the fact that he did not
receive a response, [he] filed the instant claim."  (ECF No. 62
at 4.)  Plaintiff also attaches to his original complaint two
forms entitled "Central Office Administrative Remedy Appeal" and
"Regional Administrative Remedy Appeal," which he alleges he
sent to the BOP administrative offices.  (ECF No. 4-2, Compl.,
at 8, 9.)  Plaintiff also argues that filing an administrative
grievance would be "frivolous . . . because it does not allow
monitary [sic] awards."  (ECF No. 57 at 2.)  Finally, plaintiff
argues that "special circumstances," including his limited
understanding of the English language and his lack of awareness
of the administrative remedy process, excuse his failure to
exhaust his administrative remedies.  (ECF No. 62 at 4-7; ECF
No. 87 at 2.)  As discussed below, the court finds, based on the

record, that a material issue of fact exists as to whether plaintiff exhausted his PLRA remedies.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . ., or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA exhaustion requirement applies to any suit challenging prison conditions, including § 1983 and *Bivens* lawsuits. *Porter v. Nussle,* 534 U.S. 516, 524 (2002) ("Thus federal prisoners suing under *Bivens* . . . must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit."). Moreover, § 1997e(a) "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532. Exhaustion of administrative procedures is a prerequisite even where the plaintiff seeks relief, such as money damages, not available in grievance proceedings. *Id.* at 524.

The inmate grievance program required for prisoners in the custody of the Federal Bureau of Prisons is set forth in 28 C.F.R. § 542.10(a) (2004). The administrative review process mandates that an inmate first report the issue informally to the

prison staff, and the staff should attempt to resolve the issue. *Id.* at § 542.13(a). If the inmate is dissatisfied with the staff's resolution, the inmate can then pursue the formal three-tiered administrative remedy process set forth at 28 C.F.R. § 542.10-16.

Here, defendant Beaudouin argues that plaintiff "never filed a single administrative complaint during the approximately twenty-month period he was housed at the MDC." (ECF No. 66, Fed. Defs. Mem., at 14.) The federal defendants state that they performed a search of BOP's computerized database, SENTRY, and that plaintiff did not file any administrative complaints while in custody at the MDC, between July 6, 2005 and March 21, 2007. (Fed. Defs. 56.1 Stmt. at ¶ 8.) Plaintiff, however, answered "Yes," to the question "Did you file a grievance in the jail, prison or other correctional facility where your claim(s) arose?" in his initial complaint in this case. (ECF No. 4-2, Compl., at ¶ IV(E).) Moreover, plaintiff alleged in his complaint that he completed a BP8 form and that he did not receive a response from the MDC. (Id. at ¶ IV(F).) Further, the federal defendants ignore the documents attached to plaintiff's complaint that appear to be two appeals from grievances, dated October 15, 2007, in which he alleges that "under the 14th Amendment my constitutional rights are being violated." (*Id.* at 8, 9.) Indeed, Nicole McFarland, staff

attorney at the MDC, affirmed that she only searched the SENTRY records for complaints plaintiff filed while in custody at the MDC between July 6, 2005 and March 21, 2007, and not for any complaints that plaintiff may have filed after being transferred from the MDC in March 2007 and prior to filing the instant complaint in December 2008. (ECF No. 68, McFarland Decl., at ¶ 3.) Finally, in his opposition memoranda, plaintiff repeatedly asserts, albeit, not under oath, that he complied with the prison's grievance procedure. (*See, e.g.*, ECF No. 62 at 4 ("Mr. Urena initially field [sic] his BP-8 . . . knowing that it was apparently being twarted [sic], Mr. Urena sent a BP229(13) and a BP-230(13) to the Regional Office and Central Office (see Copys [sic] attached to original complaint)); ECF No. 87, at 2 ("Mr. Urena explained that he did indeed attempt to file the administrative remedy in the initial application.").)

Plaintiff's assertions that he filed a grievance with the prison, standing alone, cannot defeat Beaudouin's motion for summary judgment. However, the court finds that plaintiff's assertion that he filed two "appeals" of administrative remedies in 2007, and attached copies to his original complaint, provides circumstantial evidence that plaintiff filed initial complaints at an earlier date. Coupled with plaintiff's repeated insistence in his opposition memoranda that he filed administrative grievances, the court cannot conclude with

15

certainty that plaintiff did not exhaust his PLRA remedies. Accordingly, the court declines to grant defendant Beaudouin summary judgment on the ground that plaintiff failed to exhaust his PLRA remedies.

### b. Personal Involvement in Constitutional Violation

Defendant Beaudouin next argues that summary judgment should be granted on the ground that he was not personally involved in an alleged violation of plaintiff's constitutional rights. (ECF No. 66, Fed. Defs. Mem., at 8-12; ECF No. 69, Beaudouin Decl., at ¶¶ 4-7.) In response, plaintiff argues that "it was Dr. Beaudouin that initially did the consultation for the results that led to the surgery . . . therefore, it can reasonably be said that that Dr. Beaudouin had knowledge that Mr. Urena had been sent to the hospital and had returned back to the detention center; therefore, the court should find that Dr. Beaudouin knew or should have known that Mr. Urena was at MDC but failed to do a follow up on him after his return from the hospital." (ECF No. 62 at 3.) As discussed below, the court has construed plaintiff's complaint as alleging, *inter alia,* constitutional violations by Dr. Beaudouin for (1) delaying and denying treatment to plaintiff prior to his initial surgery to remedy his bladder cancer; and (2) failing to adequately monitor plaintiff's recovery in between the first and second surgeries,

allegedly resulting in extreme pain to plaintiff.  The court finds that material issues of fact exist regarding defendant Beaudouin's personal involvement in these alleged violations and therefore denies his motion for summary judgment.

An Eighth Amendment claim, based on 42 U.S.C. § 1983 or *Bivens*, against prison officials arising out of allegedly inadequate medical treatment requires proof of "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  To establish deliberate indifference constituting "a constitutional violation under the Eighth Amendment, an inmate must meet both an objective and a subjective requirement." *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999).

Under the objective prong, the plaintiff must establish that an "official denied treatment needed to remedy a serious medical condition." *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996).  Under this prong, "the prisoner must prove that his medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (citing *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998)).

Under the subjective prong of the analysis, the plaintiff must prove that that the official denied treatment with a "sufficiently culpable state of mind." *Hathaway v.*

*Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). This requires that the prison official "'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hathaway*, 37 F.3d at 66 (citing *Farmer v. Brennan*, 114 S. Ct. 1970, 1979 (1994)). To demonstrate this prong of the deliberate indifference standard, officials must "'intentionally deny[] or delay[] access to medical care or intentionally interfere with the treatment once prescribed.'" *Demata v. New York State Corr. Dept. of Health Servs.*, No. 99-0066, 1999 U.S. App. LEXIS 22955, at *4 (2d Cir. Sept. 17, 1999) (quoting *Estelle*, 429 U.S. at 104-05). The Second Circuit has reserved classifying delays in providing necessary medical care as "deliberately indifferent" for "cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days, or delayed major surgery for over two years." *Demata*, 1999 U.S. App. LEXIS 22955, at *5 (citations omitted). In addition to the objective and subjective components, it is well-established that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

While defendant Beaudouin contends that no issue of material fact exists with respect to the alleged lack of his personal involvement in plaintiff's medical care, he inexplicably ignores the plainly contradictory BOP medical records that his counsel supplied to counsel for NYDH and which the non-federal defendants submitted in support of their motion for summary judgment. (Fridel Decl., Ex. L.)[3] Specifically, in his declaration, Beaudouin narrowly construes plaintiff's claims and states that his records do not indicate that he examined plaintiff at any time between November 3 and November 13, 2006, and effectively ignores the allegations regarding the lack of care prior to plaintiff's first surgery on November 3, 2006. (ECF No. 69, Beaudouin Aff., at ¶ 5.) Dr. Beaudouin's sworn statement, however, is directly contradicted by his medical notes, dated November 12, 2006, in which he notes that plaintiff complained to him of "pain in stomach" and stated that he "had difficulty making bowel movements" on that date. (Fridel Decl., Ex. L, at B000000041.) Dr. Beaudouin also made notations on November 12, 2006 of an apparent examination of plaintiff and his findings regarding plaintiff's heart, lungs, abdomen, and extremities and stamped his signature on the page of plaintiff's medical records. (*Id.*)

---

[3] Exhibit L is not filed on ECF, presumably because it contains medical records pertaining to plaintiff's medical treatment by the BOP.

Further, the court is troubled by the government's overly narrow construction of the temporal parameters of plaintiff's allegations in the complaint which alleges, *inter alia,* as follows: "After numerous requests for medical attention from symptoms I was experiencing, the health service unit of [MDC], under the directives of Robert Beaudouin, Md [sic] finally sent me to an outside hospital for medical exam from my complaint. It took over one year for this to happen from the first time I reported this [sic] symptoms." (ECF No. 45, Amend. Compl., at ¶ 2(D).) Thus, plaintiff's complaint alleges that Dr. Beaudouin delayed in transferring plaintiff to a hospital for the initial diagnosis and surgery, in addition to alleging that he failed to adequately monitor plaintiff's recovery in between the first and second surgeries. (*See id.*)

Although defendant Beaudouin's affidavit inaccurately addresses his treatment during the limited ten-day window between plaintiff's first and second surgery, (*see* ECF No. 69, Beaudouin Aff., at ¶ 6), Beaudouin does not address whether was involved in treating plaintiff prior to the initial surgery. (*See generally id.*) Indeed, had the government thoroughly reviewed plaintiff's medical records from the MDC, it is clear that Beaudouin oversaw plaintiff's medical care prior to plaintiff's surgery and made notations of numerous encounters with plaintiff. (*See, e.g., id.* at B000000047, dated July 7,

20

2006 (plaintiff complained of "seeing blood and pus upon urination . . . . Also c/o seeing blood in Bathroom tissue post BM); *id.* at B000000048, dated September 6, 2006 (plaintiff complained of "seeing blood and pus . . . in urine once a month").) That defendant Beaudouin fails to address plaintiff's allegations that he delayed in providing medical treatment prior to plaintiff's initial surgery, and that he did not conduct a thorough review of plaintiff's BOP medical records, raises serious concerns. Further, in light of the foregoing documentary evidence in the BOP medical records that flatly contradicts sworn statements and arguments by defendant Beaudouin, and considering plaintiff's apparent confusion at his deposition and his limited understanding of the English language, the court finds unavailing defendant Beaudouin's argument that plaintiff testified that he had "no recollection of having ever been treated by Beaudouin, does not know how Beaudouin came to be named as a defendant in this case, does not know where Beaudouin worked, does not know what Beaudouin looks like, and has no recollection of ever having submitted a complaint to Beaudouin." (ECF No. 66, Fed. Defs. Mem., at 11.) For the foregoing reasons, the court finds that there are disputed material facts regarding defendant Beaudouin's personal involvement in the alleged violations of plaintiff's constitutional rights.

The court next considers whether plaintiff has presented evidence establishing that there is a material issue of fact with respect to both the objective and subjective requirements for an Eighth Amendment claim of deliberate indifference to a serious medical need. On a motion for summary judgment, the moving party may show that there is no material issue of fact regarding the objective prong by presenting evidence that plaintiff's medical need was not a "condition of urgency, one that may produce death, degeneration, or extreme pain." *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (citing *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998)). However, the court cannot make this determination based on the evidence in the medical record regarding plaintiff's diagnosis of and surgery for bladder cancer and his associated complaints of pain. Accordingly, Beaudouin's motion for summary judgment on plaintiff's constitutional claims is denied.

### V.   **NYDH and Wolfson**

Defendants NYDH and Wolfson move to dismiss plaintiff's federal § 1983 or *Bivens* claims against them on the ground that they are not state or federal actors acting under the color of state or federal law. (*See generally* ECF Nos. 75, Memorandum of Law in Support of Motion to Dismiss and Motion for Summary Judgment on Behalf of Defendant New York Downtown

22

Hospital ("NYDH Mem."); ECF No. 80, Memorandum of Law in Support of Motion to Dismiss by Yan Wolfson, M.D. ("Wolfson Mem.").)  In the alternative, defendants NYDH and Wolfson move for summary judgment pursuant to Fed. R. Civ. P. 56 on the ground that there are no material issues of fact regarding the sufficiency of plaintiff's claims against them.  (*Id.*)  In response, plaintiff points to *West v. Atkins*, 487 U.S. 42 (1988), to support his argument that because Wolfson agreed with the state to treat inmates, he should be treated as acting under color of state law.  (ECF No. 63 at 5.)  The court grants the non-federal defendants' motion for summary judgment as to the § 1983 claims.

In order to succeed on a § 1983 claim, a plaintiff must show that the defendants, acting under the color of state law, deprived him of a constitutional right.  *Esposito v. New York*, 355 Fed. App'x 511, 512 (2d Cir. 2009).  A *Bivens* action allows a plaintiff to hold a federal officer liable for constitutional violations.  *Holland v. Pinkerton Sec.*, 68 F. Supp. 2d 282, 283 (S.D.N.Y. 1999).  *Bivens* actions do not, however, "provide for broad recovery from any person or entity alleged to have violated a plaintiff's rights under the Constitution or federal laws; recovery is permitted only from individual federal officials."  *Id.*

A private hospital is not considered a state or federal actor.  *White v. St. Joseph's Hosp.*, 369 Fed. App'x 225,

226 (2d Cir. 2010) ("[P]rivate actors and institutions, such as . . . hospitals . . . are generally not proper § 1983 defendants because they do not act under color of state law."); *Sockwell v. Bernstein,* No. 07-CV-00866, 2007 WL 879582 at *2 (E.D.N.Y Mar. 21, 2007) (holding that a private hospital cannot be sued under § 1983 or *Bivens*).

Here, it is undisputed that NYDH is "a private medical institution doing business as a private not-for-profit corporation." (NYDH R. 56.1 Stmt. at ¶ 1.) Accordingly, NYDH's motion for summary judgment on the § 1983 and *Bivens* claims is granted.

Nor is Dr. Wolfson a state or federal actor. In *West*, the court found that a private physician, under contract with the state to provide medical services to state inmates, was liable under § 1983. 487 U.S. at 54. The court held that the dispositive issue is "the relationship among the State, the physician, and the prisoner," *West,* 487 U.S. at 56, and considered relevant that the physician had a contract with the prison, the physician operated a twice-weekly clinic at the prison, and the physician performed the operation on the plaintiff at the prison medical facility. *West*, 487 U.S. at 55. By contrast, here plaintiff has not submitted similar evidence creating an issue of fact regarding the relationship between Dr. Wolfson and the Bureau of Prisons. Indeed, Dr. Wolfson affirms

that he does not have a contract with the federal government or any federal agency or institution. (ECF No. 82, Wolfson Aff., at ¶ 5.) Rather, he treats federal prisons as part of his private practice when the Bureau of Prisons makes appointments with his office. (*Id.*) Further, it is undisputed that Dr. Wolfson treated plaintiff only in his office in New York Downtown Hospital and never at the prison itself. (*See generally* Wolfson R. 56.1 Stmt.) Dr. Wolfson provided plaintiff with Local Civil Rule 56.1 and 56.2 statements informing him that his claims would be dismissed unless he submitted a counter-statement with supporting affidavits or declarations (*see* ECF No. 84, Notice to Pro Se Litigant Opposing Motion to Dismiss Pursuant to Local Rules 12.1 and 56.2), but plaintiff did not submit a counter-statement or otherwise raise a material issue of fact requiring a trial on the issue of Dr. Wolfson's status as a non-government actor. Accordingly, because defendant Wolfson is neither a state nor federal actor, his motion for summary judgment as to the § 1983 and *Bivens* claims is granted.

## VI. <u>Plaintiff's Claims for Negligence and Malpractice</u>

### A. Claims Against the Federal Defendants

Plaintiff also alleges negligence and/or malpractice claims against both the federal and the non-federal defendants.

(*See* ECF No. 45, Amend. Compl., at ¶ 2(D) ("[A]n error was made at my first surgery. . . . Dr. Wolfson's malpractice has left an indelible sense of fear and uncertainty in my life."); *id.* at ¶ V (plaintiff requests relief including liability for "malpractice and negligence").) Plaintiff appears to allege that the defendants were negligent in (1) delaying treatment prior to the first surgery; (2) performing the first surgery in a negligent manner; and (3) failing to monitor his recovery from that surgery. (*See generally id.*) For the reasons stated below, plaintiff's tort claims against the federal defendants are dismissed and plaintiff's state law negligence and malpractice claims against the non-federal defendants may proceed.

To the extent that plaintiff's amended complaint is construed as alleging negligence and malpractice claims against the federal defendants, and as Judge Bloom noted during the June 3, 2009 telephone conference, those claims are governed by the FTCA, 28 U.S.C. §§ 1346(b); 2671 *et seq.* (*See* ECF No. 22, Tr. at 7.) The FTCA governs claims for money damages for injury "caused by the negligent or wrongful act or omission of employee of the Government while acting within the scope his office or employment." 28 U.S.C. § 1346(b)(1). Under the FTCA, the plaintiff's exclusive remedy is an action against the United States, and not against a federal agency or one of its

employees. *Id.* § 2679(b)(1) (providing that "[t]he remedy against the United States provided by section[] 1346(b) . . . of this title for . . . personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim . . . ."); *see also C.P. Chem. Co. v. United States*, 810 F.2d 34, 37 n.1 (2d Cir. 1987) ("The FTCA expressly provides that only the United States may be held liable for torts committed by a federal agency, and not the agency itself.").

Further, the FTCA provides a two-year statute of limitations for presenting an administrative claim against the United States. 28 U.S.C. § 2401(b) ("[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues"). Plaintiff does not allege that he filed an administrative tort claim within two years of the accrual of this claim, as required by 28 U.S.C §§ 1346(b), 2401(b), 2675. Ordinarily, an FTCA claim accrues on the date of a plaintiff's injury, "although in certain instances, particularly in medical malpractice cases, accrual may be postponed until the plaintiff has or with reasonable diligence should have discovered the

critical facts of both his injury and its cause." *Tourchin v. United States*, No. 07-3458-cv, 2009 U.S. App. LEXIS 234, at *2 (2d Cir. Jan. 8, 2009) (citing *Barrett v. United States*, 689 F.2d 324, 327 (2d Cir. 1982)).

Here, plaintiff alleges tort claims against both the federal prison facility, the MDC, and Dr. Beaudouin, a federal prison doctor. All of these claims are construed as "claim[s] against the United States" and are governed by the FTCA. *See, e.g., McDowall v. Metro. Corr. Ctr.*, No. 08-Civ-8329, 2010 U.S. Dist. LEXIS 15469, at *8-10 (S.D.N.Y. Feb. 22, 2010) (construing as claims against the United States claims against named defendants Metropolitan Correctional Center ("MCC") and the warden of MCC). Plaintiff's exclusive remedy for damages for personal injury arising from the negligent act or omission of any employee of the United States is under the FTCA. 28 U.S.C. § 2679(b)(1).

Plaintiff's claims arose in connection with the alleged lack of treatment prior to and in between the surgeries he underwent in November 2006. Even assuming that plaintiff was not aware that an alleged act or omission of a federal employee occurred as of the date of his November 3 surgery, at the latest, he knew of his injury by the date he was readmitted to NYDH, November 13, 2006, by which time plaintiff had learned of his allegedly delayed diagnosis of bladder cancer and had

allegedly suffered post-surgical pain at the MDC.  (ECF No. 82,
Wolfson Aff., at ¶ 7; Fridel Decl., Ex. L, at B000000041.)
Therefore, his claims accrued at the latest on November 13,
2006.  He did not file an administrative claim prior to
commencing this suit on December 12, 2008, as required by 28
U.S.C. §§ 1346(b); 2675.  More than two years have elapsed since
his claims accrued and the time for filing an administrative
claim expired a month before he commenced this action.
Accordingly, plaintiff's FTCA claims against the federal
defendants are untimely and the court lacks subject matter
jurisdiction over plaintiff's negligence claims.  *See, e.g.,*
*Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999)
("Unless a plaintiff complies with [the] requirement [to file an
administrative claim], a district court lacks subject matter
jurisdiction over a plaintiff's FTCA claim."); *Czetwertynski v.*
*United States*, 514 F. Supp. 2d 592, 596 (S.D.N.Y. 2007)
("Because plaintiff has not exhausted his administrative
remedies, this court lacks subject matter jurisdiction over all
of plaintiff's claims.").

### B. Negligence Claims Against the Non-Federal Defendants

Plaintiff also alleges negligence and medical
malpractice claims against the non-federal defendants.  In
response, the non-federal defendants argue that plaintiff has

not alleged any medical malpractice claims, and even if he had, he has not presented any evidence to support those claims. (ECF No. 75, NYDH Mem., at 5.)

"A claim sounds in medical malpractice when the challenged conduct 'constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician.'" *Sha v. Memorial Sloan-Kettering Cancer Ctr.*, No. 99 Civ. 3233, 2000 U.S. Dist. LEXIS 17297, at *2 (S.D.N.Y. Nov. 29, 2000) (citing *Weiner v. Lenox Hill Hospital*, 650 N.Y.S.2d 629, 631 (1996)).

Claims for negligence and medical malpractice arise under state law, and a federal court generally will not have original jurisdiction over the claims unless complete diversity exists. Diversity is complete only where no plaintiff and no defendant are citizens of the same state. *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). For purposes of diversity jurisdiction, a prisoner's domicile is determined by his pre-incarceration domicile and does not change if the prisoner is transferred to a facility outside of that state. *Fermin v. Moriarty*, No. 96 Civ. 3022, 2003 U.S. Dist. LEXIS 13367, at *6 (S.D.N.Y. Aug. 1, 2003) ("It is well-established that a prisoner does not acquire a new domicile when he is incarcerated in a state different from his previous domicile. Instead, the prisoner retains his pre-incarceration domicile.").

Where there is federal question jurisdiction in an action that also alleges claims under state law, district courts have discretion to exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. §§ 1367(a).  In determining whether to exercise supplemental jurisdiction, courts must balance the "traditional 'values of judicial economy, convenience, fairness, and comity' in deciding whether to extend jurisdiction." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

Here, plaintiff's tort claims for medical malpractice against the non-federal defendants arise under New York state law. *See, e.g., Obunugafor v. Borchert*, No. 01 Civ. 3125, 2001 U.S. Dist. LEXIS 16884, at *5 (S.D.N.Y. Oct. 19, 2001) (holding that plaintiff's claims for medical neglect and failure to diagnose amounted to a claim of negligence or malpractice under state law and did not raise a federal question).  Furthermore, because all of the parties are citizens of New York, there is no diversity jurisdiction.  The fact that plaintiff now resides in a correctional facility in North Carolina, (ECF No. 99, Notice of Change of Address), is of no consequence because plaintiff's

pre-incarceration domicile, at the time of the events giving rise to this action, was New York and he is therefore deemed a citizen of New York. *Fermin*, 2003 U.S. Dist. LEXIS 13367, at *6. However, because plaintiff's state law claims are related to and, in part, form a common nucleus of operative fact with, plaintiff's federal claims, the court will retain jurisdiction over the state claims so long as the federal *Bivens* claims proceed in this action. 28 U.S.C. § 1367(a).

Furthermore, although the non-federal defendants argue that any references in plaintiff's complaint to medical malpractice are "irrelevant since plaintiff did not commence a medical malpractice claim," (ECF No. 75, NYDH Mem., at 5), they also submit an expert declaration from Dr. Jonathan M. Vapnek addressing the substance of plaintiff's malpractice claim. (ECF No. 76, Declaration of Jonathan M. Vapnek, M.D., dated January 19, 2010.) The plaintiff clearly pleads medical malpractice in his amended complaint. (ECF No. 45, Amend. Compl., at ¶ 2(D) ("Dr. Wolfson . . . confirmed that an error was made at my first surgery.").) The non-federal defendants have incorrectly interpreted Judge Bloom's comments at the June 3, 2009 conference regarding the FTCA statute of limitations as barring plaintiff's state law tort claims not only as against the federal defendants, but also as against the non-federal defendants. (*See generally* ECF No. 50, Letter to the Court,

dated November 25, 2009.)  The FTCA does not preclude plaintiff's tort claims for medical malpractice and negligence against the non-federal defendants.  However, plaintiff, proceeding *pro se,* may have reasonably understood Judge Bloom's comments at the June 3, 2009 conference as barring his tort claims against the non-federal defendants and declined to submit evidence to support his claims on that basis.

The court finds that plaintiff should have an opportunity to present evidence to refute Dr. Vapnek's medical conclusions.  The court denies the non-federal defendants' motion for summary judgment on the state tort claims without prejudice.  The parties are directed to schedule a conference with Magistrate Judge Bloom to revisit the issue of whether *pro bono* counsel can be appointed to assist plaintiff with retaining a medical expert to support his claim of medical malpractice against the non-federal defendants, and to address whether the delay in treating plaintiff's bladder cancer and the pain he suffered at the MDC rise to a level that establishes an Eighth Amendment violation against Dr. Beaudouin.

## CONCLUSION

For the foregoing reasons: (1) plaintiff's constitutional claims against NYDH and Wolfson are dismissed; (2) plaintiff's FTCA claims against MDC and Beaudouin are

dismissed; and (3) plaintiff's constitutional claims against Beaudouin and plaintiff's state law tort claims against NYDH and Wolfson shall proceed.  The parties are ordered to schedule a conference with Magistrate Judge Bloom to discuss whether *pro bono* counsel can be appointed to represent plaintiff on the remaining claims.  The United States Attorney's Office is ordered to serve a copy of this Memorandum and Order on the plaintiff and file a declaration of service by December 7, 2010. The parties are directed to submit a joint status letter via ECF as to how they intend to proceed by December 20, 2010.

**SO ORDERED.**

Dated: December 6, 2010
      Brooklyn, New York

                                    _____/s/_____
                                      KIYO A. MATSUMOTO
                                      United States District Judge
                                      Eastern District of New York