```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
 JOSE RAFAEL URENA,

                Pro Se Plaintiff,
                                                        MEMORANDUM & ORDER
           - against -
                                                        09-CV-01107 (KAM)(LB)
 YAN WOLFSON, M.D., NEW YORK DOWNTOWN
 HOSPITAL, and ROBERT BEAUDOUIN, M.D.,

                Defendants.
----------------------------------------X
```
**MATSUMOTO, United States District Judge:**

On December 9, 2008, Jose Urena ("plaintiff") commenced this *pro se* action in connection with allegedly sustained injuries to his bladder, scrotum, and abdomen while incarcerated in 2006 at the Metropolitan Detention Center in Brooklyn, New York, a federal detention center (the "MDC"). Presently before the court are the motions for summary judgment filed by defendant Yan Wolfson, M.D. ("Dr. Wolfson") and defendant New York Downtown Hospital ("NYDH") (collectively, "defendants") on plaintiff's New York State negligence and medical malpractice claims against them. For the reasons set forth below, defendants' motions for summary judgment are granted in their entirety.

1

# BACKGROUND[1]

On December 9, 2008, plaintiff commenced this *pro se* action in the Southern District of New York against the MDC, Robert Beaudouin, M.D. ("Dr. Beaudouin"), then a physician at the MDC, Dr. Wolfson, and NYDH alleging constitutional violations pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) ("*Bivens*"), and negligence and medical malpractice claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 *et seq.*, and New York State law. (*See generally* ECF No. 4-3, Complaint.) After the case was transferred to this court on March 11, 2009, an Amended Complaint was filed on November 2, 2009[2], and discovery was completed, the court granted in part and denied in part certain defendants' motions to dismiss and motions for summary judgment on December 6, 2010. (*See* ECF No. 102, Memorandum and Order ("*Urena I*")); *Urena v. Wolfson*, No. 09-CV-1107 (KAM)(LB), 2010 U.S. Dist. LEXIS 128423 (E.D.N.Y. Dec. 6, 2010).

After *Urena I*, plaintiff's claims remaining before the court are (1) a federal *Bivens* claim against Dr. Beaudouin alleging that he was deliberately indifferent to plaintiff's

---

[1] Familiarity with the facts and prior opinions of this court in this matter is presumed and only the background relevant to the instant motions is set forth below.

[2] Unless otherwise indicated, references herein are to the Amended Complaint filed on November 2, 2009. (*See* ECF No. 45, Amended Complaint.)

serious medical needs in violation of the Eighth Amendment of the United States Constitution, and (2) New York State negligence and medical malpractice claims against Dr. Wolfson and NYDH. (*See generally Urena I.*) Because the court has original federal question jurisdiction over the *Bivens* claim against Dr. Beaudouin, the court in its discretion retained supplemental jurisdiction over the related state law claims against Dr. Wolfson and NYDH. *See* 28 U.S.C. § 1367(a); (*Urena I* at 30-32).

Presently before the court are Dr. Wolfson's and NYDH's motions for summary judgment on plaintiff's New York State medical malpractice and negligence claims pursuant to Federal Rule of Civil Procedure 56. (*See* ECF No. 139, Memorandum of Law in Support of Motion for Summary Judgment and Motion to Dismiss by Dr. Wolfson, M.D. ("Wolfson Mem.")[3]; ECF No. 155, Memorandum of Law in Support of Motion for Summary Judgment on Behalf of NYDH ("NYDH Mem.").) Plaintiff filed a single opposition to defendants' motions. (*See* ECF No. 131-3, Memorandum of Law in Support of Motion in Opposition for Motions for Summary Judgment by Dr. Wolfson and NYDH ("Pl. Opp'n").) The defendants subsequently filed reply briefs in support of their respective motions. (*See* ECF No. 138, Memorandum of Law in Reply to Plaintiff's Opposition by Dr. Wolfson ("Wolfson Reply"); ECF No.

---

[3] Although Dr. Wolfson captions his motion as a motion for summary judgment *and* a motion to dismiss, the court construes his motion as only a motion for summary judgment.

3

156, Memorandum of Law in Reply to Plaintiff's Opposition and in Further Support of NYDH's Motion for Summary Judgment ("NYDH Reply").)

For the reasons set forth below, the court grants summary judgment in favor of Dr. Wolfson and NYDH on plaintiff's New York State medical malpractice and negligence claims.

## Undisputed Material Facts[4]

The following facts, taken from the parties' statements pursuant to Local Civil Rule 56.1 and accompanying affidavits and exhibits, are undisputed unless otherwise indicated. (*See* ECF No. 141, Local Rule 56.1 Statement of Undisputed Facts in Support of Motion to Dismiss by Dr. Wolfson ("Wolfson 56.1 Stmt."); ECF No. 148, Local Rule 56.1 Statement of Facts by NYDH ("NYDH 56.1 Stmt."); ECF No. 131-1, Plaintiff's Local Rule 56.1 Statement of

---

[4] As set forth in Local Civil Rule 56.1(c), "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." L. Civ. R. 56.1(c). In addition, Local Civil Rule 56.2 requires that notice be sent to *pro se* parties opposing summary judgment by the party moving for summary judgment. Here, defendants complied with Local Rules 56.1 and 56.2 by serving Local Rule 56.1 statements and Local Rule 56.2 notices on plaintiff. Although plaintiff did submit a Local Rule 56.1 statement of material facts, his statement was not correspondingly numbered to defendants' Local Rule 56.1 statements as required by Local Rule 56.1(b). Accordingly, while certain of the statements in defendants' Local Rule 56.1 statements are technically deemed admitted for the purposes of these motions, the court has liberally construed the *pro se* plaintiff's opposition papers and the evidence in the record in a light most favorable to the non-moving *pro se* party. The court also notes that both the plaintiff and Dr. Wolfson failed to provide any citations to admissible evidence in their Local Rule 56.1 statements as required by Local Rule 56.1(d).

Undisputed Facts in Support of Opposing Motion for Summary Judgment ("Pl. 56.1 Stmt.").)

The court has considered whether the parties have proffered admissible evidence in support of their positions and has viewed the facts in the light most favorable to the nonmoving plaintiff. *See Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that, in determining the appropriateness of a grant of summary judgment, . . . the district court in awarding summary judgment, may rely only on admissible evidence." (citations and quotation marks omitted)); *Scotto v. Brady*, 410 F. App'x 355, 361 (2d Cir. 2010) (summary order) ("'[A] district court deciding a summary judgment motion has broad discretion in choosing whether to admit evidence,' and . . . '[t]he principles governing admissibility of evidence do not change on a motion for summary judgment.'" (quoting *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009))). Finally, the court has also considered other materials in the record that have not been cited by the parties. *See* Fed. R. Civ. P. 56(c)(3).

In *Urena I*, the court set forth in detail the undisputed material facts relevant to the motions then before the court, which are also relevant here and which have not since materially changed. (*See Urena I* at 4-7.) Although the court assumes the parties' familiarity with the undisputed facts set

5

forth in *Urena I*, because the parties have submitted additional Local Rule 56.1 statements and affidavits in connection with the motions presently before the court, the court will briefly set forth the relevant undisputed material facts.

From July 2005 until at least December 2006, plaintiff was an inmate at MDC. (NYDH 56.1 Stmt. ¶ 2; Pl. 56.1 Stmt. ¶ 1; ECF No. 150, Transcript of Deposition of Jose Urena dated November 3, 2009 ("Urena Dep. Tr.") at 20.) On September 21, 2006, the Bureau of Prisons (the "BOP") brought plaintiff to Dr. Wolfson's office at NYDH for the first time, where Dr. Wolfson took a history and conducted an examination that revealed the possibility of bladder cancer. (ECF. No. 154-1, Affidavit of Dr. Wolfson ("Wolfson Aff.") ¶ 6.) At this time, Dr. Wolfson also ordered a urinalysis/urine cytology and an abdominal/pelvic Computerized Axial Tomography (CAT) scan with and without contrast to aid in the diagnosis, the results of which he received on September 28, 2006. (*Id.*)

On October 5, 2006, the BOP brought plaintiff to Dr. Wolfson's office at NYDH a second time, where Dr. Wolfson performed a cystoscopy that revealed two polypoid lesions, confirming the diagnosis of bladder cancer. (*Id.* ¶ 7; Wolfson 56.1 Stmt. ¶ 3; NYDH 56.1 Stmt. ¶ 4.) During this visit, Dr. Wolfson discussed the risks, benefits, and alternatives of a Trans-Urethral Resection of Bladder Tumor (TURBT) procedure with

6

plaintiff, for which he subsequently signed a consent form confirming the same. (Wolfson Aff. ¶ 7.)

On November 2, 2006, the BOP once again brought plaintiff to NYDH, where he was admitted by Dr. Wolfson for a TURBT, which Dr. Wolfson performed on the same day. (NYDH 56.1 Stmt. ¶¶ 4-6; Wolfson 56.1 Stmt. ¶ 4; Pl. 56.1 Stmt. ¶ 5.) On November 3, 2006, after an overnight stay at NYDH, plaintiff's catheter was removed, he was able to urinate, and his urine was documented to be amber-colored, blood-free, and without any clots. (NYDH 56.1 Stmt. ¶ 7.) Accordingly, on November 3, 2006, plaintiff was discharged to the MDC in stable condition, fit for confinement, and with instructions to follow up with Dr. Wolfson. (*Id.* ¶ 8.)

On November 13, 2006, the BOP once again transported plaintiff from the MDC to the emergency department at NYDH where he was re-admitted for complaints of pelvic pain and inability to urinate. (NYDH 56.1 Stmt. ¶ 9; Pl. 56.1 Stmt. ¶ 7; Wolfson Aff. ¶ 9.) After plaintiff was examined on November 13-14, 2006, he was diagnosed with a bladder perforation, and Dr. Wolfson advised that another bladder operation should be performed immediately. (NYDH 56.1 Stmt. ¶ 10; Wolfson Aff. ¶ 9.) Plaintiff, however, refused to undergo surgery on November 13, 2006, and did not give consent to surgical repair until November 17, 2006. (NYDH 56.1 Stmt. ¶ 11; Wolfson Aff. ¶ 9.) Plaintiff refused consent during

7

this period because he wanted a doctor other than Dr. Wolfson to perform this second surgery, but the BOP declined to accommodate plaintiff's request for a different doctor. (Pl. 56.1 Stmt. ¶¶ 8-9; Urena Dep. Tr. at 53-54, 83.) On November 17, 2006, Dr. Wolfson performed an exploratory laparotomy and surgical repair of the bladder perforation, with no noted complications. (NYDH 56.1 Stmt. ¶ 12; Wolfson 56.1 Stmt. ¶ 5.) During the next five days, plaintiff had an unremarkable post-operative course at NYDH and was discharged to the MDC in stable condition on November 22, 2006, with no activity or dietary restrictions. (NYDH 56.1 Stmt. ¶ 13; Pl. 56.1 Stmt. ¶ 11.) There is no evidence in the record that Dr. Wolfson had any contact with plaintiff or the BOP between November 3, 2006, when plaintiff was discharged from the NYDH after the TURBT, and November 13-14, 2006, when plaintiff was re-admitted to NYDH. (Wolfson Aff. ¶ 8.)

On May 22, 2007, the BOP once again brought plaintiff to Dr. Wolfson's office at NYDH for a urology evaluation, at which time Dr. Wolfson performed a cystoscopy that revealed a polypoid lesion, suggesting a possible recurrence of bladder cancer. (Wolfson Aff. ¶ 10.) Accordingly, Dr. Wolfson recommended another TURBT. (*Id.*) At Dr. Wolfson's request, on May 24, 2007, a urine cytology was performed that revealed cellular degeneration and noted the presence of a few transitional cells, and on June 18, 2007, a CAT scan of

8

plaintiff's abdomen and pelvis found no evidence of intraluminal bladder mass. (*Id.* ¶ 11.) Finally, on June 28, 2007, Dr. Wolfson was informed by a BOP physician that plaintiff refused to undergo the TURBT procedure. (*Id.* ¶ 12; *see* Urena Dep. Tr. at 101-02.) Plaintiff makes no allegations of medical malpractice or negligence with respect to Dr. Wolfson's or NYDH's conduct during May or June 2007.

## DISCUSSION

### I. Summary Judgment Standard

The court shall grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Redd v. Wright*, 597 F.3d 532, 536 (2d Cir. 2010) (citation omitted). Moreover, no genuine

9

issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The court must construe the facts in the light most favorable to the nonmoving party and all reasonable inferences and ambiguities must be resolved against the moving party. *Id.* Nevertheless, the nonmoving party may not rest merely on allegations or denials but must instead set out specific facts showing a genuine issue for trial. *See id.* ("To defeat a summary judgment motion, the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." (citations and internal quotation marks omitted)).

II. **Application**

Having liberally construed plaintiff's allegations in the Amended Complaint, the court previously found that plaintiff alleges medical malpractice and/or negligence with respect to defendants' performance of the TURBT procedure on November 2,

2006 and their failure to adequately monitor his recovery from that surgery.  (*Urena I* at 26, 32.)

"Under New York law, a medical malpractice plaintiff must establish (1) the standard of care where the treatment occurred, (2) that the defendant breached the standard of care, and (3) that this breach proximately caused the injury." *Hogan v. A.O. Fox Mem. Hosp.*, 346 F. App'x 627, 630 (2d Cir. 2009) (summary order). It is also well-established under New York law that "it is incumbent upon the plaintiff to present expert testimony in support of the allegations to establish a prima facie case of malpractice." *Sitts v. United States*, 811 F.2d 736, 739 (2d Cir. 1987) (citation omitted); *see Shields v. United States*, 446 F. App'x 325, 326 (2d Cir. 2011) (summary order) (same); *Smith v. Masterson*, 353 F. App'x 505, 507-508 (2d Cir. 2009) (summary order) (same); *Hogan*, 346 F. App'x at 630 (same); *Olivier v. Robert L. Yeager Mental Health Ctr.*, 398 F.3d 183, 190 (2d Cir. 2005) (same); *Milano by Milano v. Freed*, 64 F.3d 91, 95 (2d Cir. 1995) (same); *see also Fiore v. Galang*, 478 N.E.2d 188, 189 (N.Y. 1985) ("[E]xcept as to matters within the ordinary experience and knowledge of laymen, in a medical malpractice action, expert medical opinion evidence is required to demonstrate merit.").

In *Sitts*, the Second Circuit elaborated on the general standard of care for physicians and the rule requiring expert testimony in medical malpractice cases:

> A physician's obligations to his patient are to possess at least the degree of knowledge and skill possessed by the average member of the medical profession in the community in which he practices, to exercise ordinary and reasonable care in the application of that professional knowledge and skill, and to use his best judgment in the application of his knowledge and skill. In order to show that the defendant has not exercised ordinary and reasonable care, the plaintiff ordinarily must show what the accepted standards of practice were and that the defendant deviated from those standards or failed to apply whatever superior knowledge he had for the plaintiff's benefit. The requirement that the plaintiff introduce expert medical testimony is imposed in part because without expert assistance a jury will often have no understanding of what constitutes reasonable behavior in a complex and technical profession such as medicine. The requirement is no less applicable in a case that is tried to the court without a jury.

*Sitts*, 811 F.2d at 739-740 (citations and internal quotation marks omitted). In addition to requiring expert testimony to establish the standard of care and breach, expert testimony may also be required to prove that the negligence was the proximate cause of the injury complained of. *Id.* at 740. This requirement for a plaintiff to submit expert medical opinion applies equally to *pro se* inmate plaintiffs. *See, e.g.*, *Doe v. Torres*, No. 05 Civ. 3388 (JSR)(GWG), 2006 U.S. Dist. LEXIS 88536, at *13 (S.D.N.Y. Dec. 8, 2006), *adopted by* 2007 U.S. Dist. LEXIS 16398 (S.D.N.Y. Mar. 5, 2007); *Boomer v. Lanigan*,

12

No. 00 CIV. 5540 (DLC), 2002 U.S. Dist. LEXIS 20514, at *26 (S.D.N.Y. Oct. 24, 2002).

The only exception to the rule requiring expert testimony in medical malpractice cases is where "a deviation from a proper standard of care may be so clear and obvious that it will be within the understanding of the ordinary layman without the need for expert testimony," such as where a dentist has pulled the wrong tooth or where an unexplained injury occurred to a part of the body remote from the site of the surgery. *Sitts*, 811 F.2d at 740. The Second Circuit has cautioned, however, that "the medical malpractice case in which no expert medical testimony is required is 'rare,'" and "[e]ven where it might initially appear that the matter would be within the trier's ordinary competence, . . . if the defendant can proffer *any evidence* to support the view that a proper standard of care was followed, the plaintiff cannot prevail without introducing expert medical testimony." *Id.* (emphasis added) (citations omitted).

Here, the issue of whether Dr. Wolfson and NYDH were negligent in diagnosing and treating plaintiff's cancer, performing the TURBT, monitoring his recovery, and discharging him on November 3, 2006, does not fall under the limited exception for medical malpractice cases presenting an alleged deviation "within the understanding of the ordinary layman."

13

*Id.; see Fiore*, 478 N.E.2d at 189 (finding that failure to diagnose cancer and the performance of an abdominal operation "are not matters within the ordinary experience of laypersons"). Accordingly, "the defendant is entitled to . . . the granting of a motion for summary judgment in opposition to which the plaintiff fails to come forward with such [expert medical] evidence." *Sitts*, 811 F.2d at 740 (citations omitted); *see also Chase v. Cayuga Med. Ctr. at Ithaca, Inc.*, 769 N.Y.S.2d 311, 313 (N.Y. App. Div. 3d Dep't 2003) ("Based on the lack of admissible expert proof that defendant deviated from accepted practices or that any such negligence proximately caused decedent's death, summary judgment was appropriate.").

In support of their motions for summary judgment, defendants submit the declaration of Board-certified urologist Jonathan M. Vapnek, M.D., who is duly licensed to practice medicine in New York. (ECF. No. 154-2, Declaration of Jonathan M. Vapnek, M.D. ("Vapnek Decl.") ¶ 1.) After his review of plaintiff's allegations in the complaint, plaintiff's deposition testimony, and plaintiff's medical records from NYDH, Dr. Wolfson, and the BOP, Dr. Vapnek opined that, within a reasonable degree of medical certainty, "the care and treatment rendered to the plaintiff at NYDH was at all times appropriate and within the accepted standards of medical practice." (*Id.* ¶ 17.) Specifically, Dr. Vapnek opined to a reasonable degree

of medical certainty that: (1) a TURBT is most typically either an ambulatory or an overnight procedure, which does not require an extended hospital stay, and it was within the accepted standard of medical care to discharge plaintiff on November 3, 2006, the day after the TURBT (*id.* ¶ 18); (2) complaints of pain are common and normal after a TURBT, and becase plaintiff was in a stable condition, discharge to the MDC on November 3, 2006 was appropriate (*id.* ¶ 19); (3) a perforation of plaintiff's bladder was not evident, did not occur, and was not diagnosable while plaintiff was at NYDH following the TURBT on November 2-3, 2006, as plaintiff was able to urinate after removal of the catheter and his urine was appropriately colored and free of blood (*id.* ¶¶ 19-20); (4) the bladder perforation occurred, and became diagnosable and evident, at some point after plaintiff was discharged from NYDH and before his re-admission on November 13, 2006 (*id.* ¶ 20); (5) bladder perforation is a known and accepted risk of a TURBT and is one of the most common complications of the procedure; thus plaintiff's sustaining of a bladder perforation does not in and of itself evidence any deviation from the standard of care in the performance of a TURBT (*id.* ¶ 21); and (6) the bladder perforation was timely and appropriately diagnosed upon plaintiff's re-admission to the NYDH on November 13-14, 2006 (*id.* ¶ 23).

In response to this evidence, plaintiff does not submit any medical expert evidence, but rather relies on general, conclusory allegations of medical malpractice, based on speculation, that are unsupported by competent evidence. Indeed, in an affidavit, plaintiff claims that he was not given "proper follow-up treatment" after the November 2, 2003 TURBT procedure, that the November 17, 2006 surgery was performed to "repair the first surgery that had been improperly done," and that "[i]f I had not been rushed back [to the MDC] the first time [after the TURBT] none of this would have happened." (ECF No. 131-2, Affidavit of Jose Rafael Urena ¶¶ 7, 11, 12.) Plaintiff also claims, based on inadmissible hearsay, that he has since been informed by medical staff at Butner Federal Correctional Complex, his current place of confinement, that he "never had bladder cancer." (*Id.* ¶ 13.)[5]

In addition, plaintiff argues in his opposition brief that "he suffered through three (3) operations, almost died from the incompetence of Dr. Wolfson and [NYDH], and after three operations plaintiff finds out he never even had bladder cancer." (Pl. Opp'n at 3.) These conclusory statements, which are not supported by citations to any evidence, let alone

---

[5] Plaintiff claims to "have expert medical opinion on the fact that he never had bladder cancer" (Pl. Opp'n at 3-4) and that he sent such proof to Magistrate Judge Bloom (Urena Dep. Tr. at 107-08), however, there is no such evidence before the court.

admissible evidence, are insufficient to meet plaintiff's burden to defeat summary judgment, and "[p]laintiff's own medical analysis, provided in his *pro se* briefs, cannot be considered because he is not qualified as a medical expert." *Chase*, 769 N.Y.S.2d at 312 (citations omitted); *see Alvarez v. Prospect Hosp.*, 501 N.E.2d 572, 574 (N.Y. 1986) ("In a medical malpractice action, a plaintiff, in opposition to a defendant physician's summary judgment motion, must submit evidentiary facts or materials to rebut the prima facie showing by the defendant physician that he was not negligent in treating plaintiff so as to demonstrate the existence of a triable issue of fact." (citations omitted)); *Giambona v. Stein*, 697 N.Y.S.2d 399, 400 (N.Y. App. Div. 3d Dep't 1999) ("In the absence of expert medical proof that defendant's conduct, omissions or departures were a competent producing cause of any injury or damage to plaintiff or caused a worsening of his condition, plaintiff would have been unable to establish a prima facie case of medical malpractice to the jury and the complaint was properly dismissed." (citations omitted)); *Holbrook v. United Hosp. Med. Ctr.*, 669 N.Y.S.2d 631, 632 (N.Y. App. Div. 2d Dep't 1998) ("General allegations of medical malpractice, merely conclusory in nature and unsupported by competent evidence tending to establish the essential elements of the claim, are

insufficient to defeat a defendant physician's entitlement to summary judgment." (citations omitted)).

Where, as here, the defendants can "proffer any evidence to support the view that a proper standard of care was followed, the plaintiff cannot prevail without introducing expert medical testimony." *Bender v. Lowe*, No. 08 Cv. 0334 (BSJ), 2011 U.S. Dist. LEXIS 99053, at *35 (S.D.N.Y. Aug. 30, 2011) (quoting *Sitts*, 811 F.2d at 740). For more than three years since this action was filed[6], plaintiff has been unable to obtain a medical expert and has failed to submit any expert medical evidence to establish a prima facie case of medical malpractice and or negligence despite having had more than ample opportunity to find and retain an expert, possibly including the medical doctors at his current custodial medical facility. Accordingly, the court grants summary judgment in favor of defendants on plaintiff's medical malpractice and negligence claims.

Granting summary judgment to defendants NYDH and Dr. Wolfson is consistent with several Second Circuit cases affirming the granting of summary judgment in favor of defendants on medical malpractice and negligence claims where

---

[6] The case was also stayed for six months from January 13, 2011 to June 15, 2011 while the court sought *pro bono* counsel to represent plaintiff on his remaining claims and to assist him with retaining a medical expert, but such efforts were ultimately unsuccessful. (*See* ECF No. 110, Order; ECF No. 117, Order.)

plaintiffs – including *pro se* plaintiffs - failed to present expert testimony to establish a prima facie case of medical malpractice, and thus plainly failed to present evidence sufficient to establish the existence of any genuine issue of material fact rendering the award of summary judgment inappropriate. *See, e.g.*, *Shields*, 446 F. App'x at 326; *Smith*, 353 F. App'x at 507-508; *Sitts*, 811 F.2d at 739-41; *cf. Page v. Monroe*, 300 F. App'x 71, 75 (2d Cir. 2008) (summary order) (finding that plaintiff's submission of expert testimony on the issue of whether a physician violated the applicable standard of care, which contradicted that of defendant's expert, was sufficient to raise a triable question of fact as to whether the physician breached her duty of care).

The court grants summary judgment in favor of defendants NYDH and Dr. Wolfson. Further, the court agrees with NYDH's argument pursuant to New York law, that NYDH is not liable for the conduct of Dr. Wolfson because he was acting independently of NYDH as a private attending physician exercising his independent medical judgment. (*See* NYDH Mem. at 2-4.) Moreover, as set forth in the undisputed affidavit of Dr. Vapnek, the care and treatment rendered to plaintiff at NYDH was within, and met, good and accepted standards of medical care. (Vapnek Decl. ¶¶ 6, 17, 24.)

## CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment are granted in their entirety. The Clerk of the Court is respectfully requested to enter a partial judgment in favor of defendants Dr. Wolfson and NYDH in accordance with this decision. Defendant NYDH shall serve a copy of this Memorandum and Order on the *pro se* plaintiff by March 22, 2012 and file a certificate of service via ECF by March 23, 2012.

**SO ORDERED.**

Dated:    March 20, 2012
            Brooklyn, New York

                                                    /s/
                                      KIYO A. MATSUMOTO
                                      United States District Judge
                                      Eastern District of New York