UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------X

JOSE RAFAEL URENA,

               *Pro se* Plaintiff,

    - against -

ROBERT BEAUDOUIN, M.D.,

            Defendant.

---------------------------------X

**MEMORANDUM & ORDER**

09-CV-1107 (KAM)(LB)

**MATSUMOTO, United States District Judge:**

On December 9, 2008, Jose Urena ("plaintiff") commenced this *pro se* action against Robert Beaudouin, M.D. ("Dr. Beaudouin" or "defendant") and other defendants alleging injuries to his bladder, scrotum, and abdomen related to bladder cancer while he was incarcerated in 2006 at the Metropolitan Detention Center in Brooklyn, New York ("MDC").[1] (*See* ECF No. 4-3, Complaint.) After the case was transferred from the Southern District of New York to this court on March 11, 2009, an amended complaint was filed on November 2, 2009[2], and discovery closed on November 23, 2009. The court granted in part and denied in part the defendants' respective motions to dismiss and motions for

---

[1] The Complaint named Yan Wolfson, M.D., New York Downtown Hospital, Dr. Beaudouin, and MDC as defendants. After the court's decisions dated December 6, 2010 and March 20, 2012, the only remaining defendant in the case is Dr. Beaudouin.

[2] Unless otherwise indicated, references herein are to the Amended Complaint filed on November 2, 2009. (ECF No. 45, Amended Complaint.)

summary judgment on December 6, 2010.  (*See* ECF No. 102, Memorandum and Order ("*Urena I*")); *Urena v. Wolfson*, No. 09-CV-1107 (KAM)(LB), 2010 U.S. Dist. LEXIS 128423 (E.D.N.Y. Dec. 6, 2010).

In *Urena I*, the court denied the summary judgment motion of defendant Dr. Beaudouin, then a physician at MDC, on plaintiff's constitutional claim pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), alleging that Dr. Beaudouin was deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment of the United States Constitution (the "*Bivens* claim").  (*Urena I* at 11-22.) Presently before the court is Dr. Beaudouin's motion for partial reconsideration pursuant to Local Civil Rule 6.3 of the court's denial of summary judgment on plaintiff's *Bivens* claim against him.  For the reasons stated below, the court denies Dr. Beaudouin's motion for partial reconsideration.

## BACKGROUND[3]

In *Urena I*, the court liberally construed the *pro se* plaintiff's *Bivens* claim as alleging that Dr. Beaudouin was deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment by (1) delaying and denying

---

[3] The court assumes the parties' familiarity with the facts and prior opinions of the court in this matter, particularly the court's statement of undisputed material facts in *Urena I*.  (*Urena I* at 4-7.)  Only the background relevant to Dr. Beaudouin's motion for partial reconsideration is set forth below.

treatment to plaintiff prior to his initial surgery at New York Downtown Hospital ("NYDH") on November 2, 2006 to remedy his bladder cancer; and (2) failing to adequately monitor plaintiff's recovery in between his discharge from NYDH to MDC on November 3, 2006 and his re-admission to NYDH on November 13, 2006 for surgical repair of a bladder perforation. (*Urena I* at 16-17, 20.) The court denied Dr. Beaudouin's motion for summary judgment on the *Bivens* claim. (*See id.* at 11-22.)

On December 20, 2010, Dr. Beaudouin timely filed a motion for partial reconsideration. (*See* ECF No. 105, Motion for Reconsideration.) Because the case was stayed for six months from January 13, 2011 to June 15, 2011 while the court unsuccessfully sought *pro bono* counsel to represent plaintiff (*see* ECF No. 110, Order dated January 13, 2011; ECF No. 117, Order dated June 15, 2011), Dr. Beaudouin's motion for reconsideration was terminated without prejudice on April 5, 2011, and he was granted leave to re-file his motion after the stay had been lifted. (*See* Order dated April 5, 2011.)

Thereafter, in accordance with the briefing schedule subsequently adopted by the court, Dr. Beaudouin re-filed his motion for partial reconsideration on September 12, 2011 (*see* ECF No. 143, Memorandum of Law in Support of Defendant Beaudouin's Motion for Partial Reconsideration ("Beaudouin Mem.")) with an accompanying declaration (*see* ECF No. 143-1, Declaration of Dr.

3

Beaudouin ("Beaudouin Decl.")).  The plaintiff filed an opposition to Dr. Beaudouin's motion (*see* ECF No. 130, Reply to Defendant's Memorandum of Law in Support of Defendant Beaudouin's Motion for Partial Reconsideration ("Pl. Opp'n")), and Dr. Beaudouin filed a reply brief (*see* ECF No. 144, Reply Memorandum of Law in Further Support of Defendant Beaudouin's Motion for Partial Reconsideration ("Beaudouin Reply")).  After considering the parties' submissions and for the reasons set forth below, the court denies Dr. Beaudouin's motion for partial reconsideration.

## DISCUSSION

**I.      Legal Standard for Reconsideration**

"The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court, and 'is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Mangino v. Inc. Vill. of Patchogue*, 814 F. Supp. 2d 242, 247 (E.D.N.Y. 2011) (citations omitted).  Local Civil Rule 6.3 provides that a party moving for reconsideration must set forth "concisely the matters or controlling decisions which counsel believes the court has overlooked."  Local Civ. R. 6.3. "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest

injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citation omitted).

"It is black letter law that a 'motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court.'" *Nat'l Union Fire Ins. Co. v. Las Vegas Prof'l Football L.P.*, 409 F. App'x 401, 403 (2d Cir. 2010) (summary order) (citations omitted); *see also Vornado Realty Trust v. Castlton Envtl. Contrs., LLC*, No. 08-CV-04823 (DLI)(JO), 2011 U.S. Dist. LEXIS 132086, at *5 (E.D.N.Y. Nov. 16, 2011) ("Reconsideration is not a proper tool to repackage and relitigate arguments and issues already considered by the court in deciding the original motion." (citation omitted)). Undoubtedly, the "standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted).

## II.      Dr. Beaudouin's Motion for Partial Reconsideration

Dr. Beaudouin moves for reconsideration of the court's denial of summary judgment on the *Bivens* claim on three grounds:

5

(1) the court incorrectly concluded that Dr. Beaudouin authored a treatment note dated November 12, 2006; (2) the court overlooked the fact that plaintiff himself limited his claim to the period between November 3, 2006 and November 13, 2006; and (3) the court incorrectly concluded that there were material disputed facts related to plaintiff's failure to exhaust his administrative remedies.  Each one of these grounds will be discussed in turn.

### A.    The Treatment Note Dated November 12, 2006

In finding there is a genuine dispute of material fact as to whether Dr. Beaudouin was personally involved in the alleged violation of plaintiff's constitutional rights, the court noted a one-page, handwritten treatment note dated November 12, 2006 obtained from plaintiff's medical records while detained at MDC. (*See* ECF No. 74, Declaration of Alexandra Fridel, Exhibit L ("MDC Records"), at B000000041 (the "Treatment Note").) According to the Treatment Note, plaintiff complained of "pain in stomach" and stated that he "had difficulty making bowel movements" on that date, and the Treatment Note also contained notations of an apparent examination of plaintiff and findings regarding his heart, lungs, abdomen, and extremities. (*Id.; see Urena I* at 19.) Importantly, the Treatment Note contained Dr. Beaudouin's stamped signature and appeared to directly contradict the statement in his declaration in support of his motion for summary judgment that plaintiff's medical records do not indicate

that he examined plaintiff between November 3 and November 13, 2006.  (*See Urena I* at 19; ECF No. 69, Declaration of Dr. Beaudouin ¶ 6.)

Dr. Beaudouin, however, contends that "a close examination of the [Treatment Note] shows that it was prepared by a Physician's Assistant named Mitchell," and asserts that the handwriting is different.  (Beaudouin Mem. at 3-4.)  He further asserts that he did not author the Treatment Note or review it on November 12, 2006, but "merely entered a very short note" dated November 16, 2006 – three days after plaintiff had been re-admitted to NYDH – in a circle at the bottom right-hand corner of the Treatment Note stating that plaintiff had been hospitalized.  (*Id.* at 3.)  Although the court notes that defendant never submitted the underlying MDC medical records nor the explanation he now offers in connection with his motion for summary judgment, the court acknowledges that Dr. Beaudouin's explanation of the November 12, 2006 Treatment Note may be accepted by a jury.[4] Nonetheless, Dr. Beaudouin's decision to make such a notation on November 16, 2006 on the bottom of the Treatment Note dated November 12, 2006 is peculiar in light of his later supplemental declaration in support of reconsideration filed on September 12, 2011 that he did not recall treating plaintiff at any time after

---

[4] The Treatment Note is a photocopy and all text contained on the note, particularly Dr. Beaudouin's notation at the bottom of the page, is in small, cursive handwriting and difficult to read.

November 1, 2006, when plaintiff was purportedly transferred out of Dr. Beaudouin's building and treated thereafter by other physicians.  (Beaudouin Decl. ¶¶ 5-7.)

Moreover, the medical record preceding the November 12, 2006 Treatment Note reveals a note authored by Dr. Beaudouin on November 7, 2006 requesting a follow-up MRI of plaintiff's abdomen and pelvis (see MDC Records at B000000042), and a subsequent medical note authored by a Dr. Goldstein on November 13, 2006 – the day plaintiff was re-admitted to NYDH - documents plaintiff's complaints of pain and an inability to urinate for four days (see MDC Records at B000000040).  Curiously, Dr. Beaudouin then claims to have noted on November 16, 2006, at the bottom of the November 12, 2006 Treatment Note, that plaintiff was readmitted to the hospital.  Dr. Beaudouin fails to explain why he made notations in the plaintiff's medical records on November 7 and November 16, 2006 regarding plaintiff's MRI and hospitalization if he did not treat plaintiff after November 1, 2006.

Even if the court accepted the defendant's invitation to improperly act as a handwriting expert regarding the November 12 and November 16, 2006 treatment notes, and found that Dr. Beaudouin did not author the November 12, 2006 Treatment Note and did not have any interaction with plaintiff between November 1 and November 13, 2006 because Dr. Beaudouin and plaintiff were

located in different buildings at MDC (*see* Beaudouin Decl. ¶ 7),
these additional facts do not alter the conclusion reached by the
court that there is a genuine dispute of material fact as to
whether Dr. Beaudouin was personally involved in the alleged
violation of plaintiff's constitutional rights during plaintiff's
incarceration at MDC.  As previously discussed in *Urena I*, Dr.
Beaudouin "effectively ignores the allegations regarding the lack
of care prior to plaintiff's first surgery" on November 2, 2006.
(*Urena I* at 19-21.)  For example, the record is replete with Dr.
Beaudouin's notations documenting his numerous encounters with
plaintiff and plaintiff's ongoing complaints relevant to his
bladder cancer prior to November 2, 2006.  (*Id.* at 19-21; *see,
e.g.*, MDC Records at B000000047 (notation dated July 7, 2006
stating that plaintiff complained of "seeing blood and pus upon
urination x 1.5 years"); *id.* at B000000046 (notation dated July
20, 2006 stating the plaintiff complained of "blood in urine at
times"); *id.* at B000000048 (notation dated September 6, 2006
stating that plaintiff complained of "seeing blood and pus . . .
in urine once a month).)[5]

---

[5]    As the party moving for summary judgment, Dr. Beaudouin made no
effort to support the blanket statements in his declaration that he had no
interaction with plaintiff with any citations to admissible evidence, such as
by providing the court with citations to plaintiff's medical records at MDC
and information as to which physicians at MDC did in fact interact with
plaintiff, if not Dr. Beaudouin. Indeed, Dr. Beaudouin never submitted any of
plaintiff's medical records from MDC to the court, let alone a complete,
legible set of medical records.  The MDC Records as submitted to the court by
NYDH are out-of-order, unorganized, of poor quality, partially illegible, and
cutoff, presenting difficulties for the court to make definitive findings

Accordingly, resolving, as it must, all reasonable inferences and ambiguities in favor of the nonmoving party on a summary judgment motion, the court finds on the record before it that Dr. Beaudouin has not established in his original motion or on reconsideration that there is any basis to disturb the court's conclusion in *Urena I* that genuine disputes of material fact exist as to whether Dr. Beaudouin was personally involved in the alleged violation of plaintiff's constitutional rights.

**B.   Plaintiff's Limitation of His Claims to the Period Between November 3, 2006 and November 13, 2006**

Relying on plaintiff's November 3, 2009 video-conference deposition testimony in response to questions posed by government counsel, Dr. Beaudouin asserts that plaintiff limited his *Bivens* claim to the time period between his discharge from NYDH to MDC on November 3, 2006 and his re-admission to NYDH on November 13, 2006.  (Beaudouin Mem. at 5-8.)  The court, however, rejects defendant's reliance on the ambiguous testimony of the *pro* se, non-English speaking plaintiff as a basis to foreclose claims properly alleged in the *pro se* complaint and reasserted in plaintiff's opposing papers.

First, Dr. Beaudouin raises arguments on reconsideration that are similar to arguments raised in

---

regarding the extent, or lack, of interaction between Dr. Beaudouin and plaintiff.  Should this case proceed to trial, Dr. Beaudouin is expected to submit orderly, legible, complete, and chronologically paginated copies of plaintiff's medical records.

connection with his motion for summary judgment and rejected by the court.[6]  His more recent arguments do not involve any newly discovered evidence that could not have been presented to the court prior to its December 6, 2010 decision and is thus not appropriate for a motion for reconsideration.  *See Nat'l Union Fire Ins. Co.*, 409 F. App'x at 403.

Second, Dr. Beaudouin's selective citations to plaintiff's deposition testimony are unavailing in the context of his motion for reconsideration of his summary judgment motion. (Beaudouin Mem. at 5-6.)  Defendant cites the following line of questions and responses during plaintiff's deposition.  In response to defense counsel's question as to what plaintiff is "alleging was wrong with the medical treatment that you received while you were an inmate at MDC in Brooklyn," plaintiff responded, "[w]hat I allege in Brooklyn is that I was not given any appropriate treatment as I was about to die, no one took care of me.  I was just there dying in my bed." (*Id.*; ECF No. 70-2, Transcript of Deposition of Jose Urena dated November 3, 2009 ("Urena Dep. Tr.") at 42-43.)  Government counsel next asked, "what period in time do you claim that no one was giving you treatment," and plaintiff answered that "[a]fter the operation, that wrong operation, I never had any treatment," referring to

---

[6]  In *Urena I*, as here, "the court is troubled by the government's overly narrow construction of the temporal parameters of plaintiff's allegations in the complaint . . . ." (*Urena I* at 20.)

the Trans-Urethral Resection of Bladder Tumor ("TURBT") procedure performed at NYDH on November 2, 2006.  (Urena Dep. Tr. at 43.) Subsequently, when defense counsel sought to confirm that plaintiff is "not claiming that there was anything wrong with the treatment [he] received prior to the [November 2, 2006] surgery," plaintiff responded "Correct.  After the operation I did not receive treatment."  (*Id.* at 44.)

Contrary to defendant's contentions, plaintiff's answers do not lead to the conclusion that plaintiff "*expressly* narrowed his own claims to the time period between November 3 and November 13, 2006."  (Beaudouin Mem. at 5.)  Rather, plaintiff only reiterated that he did not receive appropriate treatment at MDC after the November 3, 2006 procedure.  Defense counsel never asked plaintiff specific questions to elicit testimony regarding plaintiff's treatment or lack of treatment at MDC prior to November 3, 2006.

Indeed, prior to the foregoing line of questioning cited by Dr. Beaudouin, defense counsel stated, "[t]he way I read your complaint, you are complaining that Dr. Beaudouin in MDC did not provide you with proper medical treatment.  Do you understand that those are the allegations you are making in this case?" (Urena Dep. Tr. at 37.)  Plaintiff responded, "Yes, correct." (*Id.*)  Defense counsel then asked plaintiff "[w]hat specifically do you claim that Dr. Beaudouin did wrong in connection with your

12

medical treatment," and plaintiff responded, without any temporal limitation, that Dr. Beaudouin "is just part of what happened to me.  They never really did give me any treatment. . . .  The treatment, when I was in Brooklyn, they had to take me to emergency rooms because I was about to die.  I couldn't stand it any longer."  (*Id.*)  As previously discussed, this reading of plaintiff's testimony is consistent with plaintiff's medical records, which establish that Dr. Beaudouin did in fact treat and examine plaintiff prior to November 3, 2006.  Dr. Beaudouin cannot now on reconsideration argue that the *pro se* plaintiff expressly limited his claims arising prior to November 3, 2006, particularly where the plaintiff denies that he intended to abdandon any such claims.  *See* Pl. Opp'n at 4 (stating that plaintiff sought medical treatment at MDC for a period of over one year and arguing that defense counsel – "a skilled attorney" – twisted the meanings of plaintiff's words during the deposition).

Third, as discussed in *Urena I*, plaintiff adequately alleged claims arising from Dr. Beaudouin's conduct at MDC prior to November 3, 2006 in the Amended Complaint, which is what defines plaintiff's claims.  (*See Urena I* at 20 (quoting Amended Complaint ¶ II(D) ("After numerous requests for medical attention from symptoms I was experiencing, the health service unit of [MDC], under the directives of Dr. Beaudouin, Md [sic] finally

sent me to an outside hospital for medical exam [sic] from my complaint[.]  It took over one year for this to happen from the first time I reported this [sic] symptoms.")); *see also* ECF No. 45-2, Motion in Support of Claim ¶ 1 ("Mr. Urena asserts that while he was being housed at [MDC] . . . Mr. Urena started to experience pain around his bladder area.  After several attempts at sick call [sic] to find out what the problem was Mr. Urena was finally taken to the [NYDH] . . . .")).  Plaintiff's deposition testimony does not alter the court's conclusion in *Urena I* that the Amended Complaint "alleges that Dr. Beaudouin delayed in transferring plaintiff to a hospital for the initial diagnosis and surgery, in addition to alleging that [Dr. Beaudouin] failed to adequately monitor plaintiff's recovery in between the first and second surgeries."  (*Urena I* at 20.)

Finally, a review of the entire transcript of plaintiff's deposition reveals that (1) it was taken by video-conference with government counsel and a Spanish interpreter located in Brooklyn, New York, and the plaintiff located in the Butner Federal Correctional Complex in Butner, North Carolina (Urena Dep. Tr. at 4); (2) the *pro se* plaintiff started the deposition without eating or taking his medication for diabetes (*id.* at 7-9); (3) on numerous questions and responses, the interpreter corrected herself or was corrected by the Assistant U.S. Attorney, or plaintiff's responses indicated a lack of

14

comprehension (*see, e.g.*, *id.* at 16:16-25, 20:12-16, 23:3-10,
27:9-14; 28:2-12, 29:21-30:19); and (4) plaintiff did not hear or
understand some of the questions due either to language issues or
noise (*see, e.g.*, *id.* at 31:11-15, 31:24-32:4, 32:22-33:8).  As
noted in *Urena I*, the court cannot appropriately rule that the
*pro se* plaintiff – an inmate with a limited understanding of
English who was deposed while in prison using a translator via a
video teleconference – has abandoned his claims for Dr.
Beaudouin's alleged conduct prior to November 3, 2006, based on
his answers to specific questions posed by defense counsel during
plaintiff's deposition.  Plaintiff's claims were properly alleged
in the Amended Complaint, and are supported by plaintiff's
medical records and his testimony.  *See Graham v. Lewinski*, 848
F.2d 342, 344 (2d Cir. 1988) ("[S]pecial solicitude should be
afforded pro se litigants generally, when confronted with motions
for summary judgment.  Pro se prisoners are, of course, entitled
to at least the same solicitude." (internal citations omitted)).
Indeed, plaintiff was neither specifically asked whether, nor did
he expressly state during his deposition, that any claims for Dr.
Beaudouin's conduct prior to November 3, 2006 were mistakenly
brought or that he intended to abandon such claims.

Accordingly, the court finds that Dr. Beaudouin has not
established on reconsideration that there is any basis to alter
the court's conclusion in *Urena I* that plaintiff alleged a *Bivens*

claim arising from Dr. Beaudouin's conduct at MDC prior to November 3, 2006 and that there is evidence in the record to support such a claim.  There are thus genuine disputes of material fact as to whether Dr. Beaudouin was personally involved in the alleged violation of plaintiff's constitutional rights prior to November 3, 2006.

### C.   Plaintiff's Failure to Exhaust Administrative Remedies

Dr. Beaudouin offers several arguments for why the court incorrectly concluded that there were genuine disputes of material fact related to plaintiff's failure to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), which is an affirmative defense and not a jurisdictional predicate.  *See Handberry v. Thompson*, 446 F.3d 335, 342 (2d Cir. 2006).  None of Dr. Beaudouin's arguments merit reconsideration.

First, Dr. Beaudouin argues that even if there was a link between the BP-8 that plaintiff claims to have filed at MDC in 2006 and the Regional and Central Office Administrative Remedy Appeals forms dated October 15, 2007 accompanying plaintiff's original complaint, "the later forms would have been deemed untimely if they were meant to encompass the treatment he received at the MDC."  (Beaudouin Mem. at 9.)  An appeal by an inmate who is not satisfied with the Warden's response to his initial filing may be submitted "to the appropriate Regional

16

Director within 20 calendar days of *the date the Warden signed the response*." 28 C.F.R. § 542.15(a) (emphasis added). There is no evidence in the current record of any written response by the Warden to plaintiff's BP-8, *see* 28 C.F.R. § 542.18; Amended Complaint ¶ IV(F)(2), and thus the court cannot determine whether plaintiff's filing of the appeals on October 15, 2007 was untimely.

Second, Dr. Beaudouin argues that the lack of a response to the alleged grievance that plaintiff filed in 2006 "constitutes a denial, which would have commenced the limitation period for filing an appeal," and that the filing of the appeals dated October 15, 2007 was thus untimely. (Beaudouin Mem. at 9-10 (citing 28 C.F.R. § 542.18 ("If the inmate does not receive a response within the time allotted for reply, including extension, the inmate *may* consider the absence of a response to be a denial at that level." (emphasis added)). In support of this contention, Dr. Beaudouin cites to *Williams v. United States*, No. 02 Civ. 6523 (HBP), 2004 U.S. Dist. LEXIS 7291 (S.D.N.Y. Apr. 26, 2004), a case finding that a pretrial detainee failed to comply with the PLRA's exhaustion requirement by not pursuing the final administrative remedy available to him – an appeal to the General Counsel level – when the Regional Director failed to respond to his grievance within thirty days. *Id.* at *27. In contrast to the *Williams* case, here there is evidence that the plaintiff did

indeed pursue an appeal at the General Counsel level by filing the "Central Office Administrative Remedy Appeal" dated October 15, 2007, attached to his original complaint. (*See* Complaint at 8); 28 C.F.R. § 542.15(b)(1) ("Appeals to the General Counsel shall be submitted on the form designed for Central Office Appeals . . . .").

Because the court finds that there are genuine disputes of material fact as to whether plaintiff exhausted administrative remedies, the court need not decide whether a *pro se* inmate fails to exhaust administrative remedies by not deeming the absence of a response to be a denial, and not filing an appeal within twenty days after "the time allotted for reply" in the absence of a response to a BP-8 filed at his prison. *See* 28 C.F.R. §§ 542.15(a), 542.18; *Wirth v. Menifee*, No. 97 CIV. 8862 (DLC), 1998 U.S. Dist. LEXIS 2670, at *11-12 (S.D.N.Y. Mar. 9, 1998) (declining to reach the issue of "whether an inmate *must* file an appeal with the Central Office when the Regional Director has failed to respond" to satisfy the PLRA's exhaustion requirements (emphasis added)). The court notes that the language of the applicable regulation, 28 C.F.R. § 542.18, states that an inmate "may" consider the absence of a timely response to his administrative remedy request to be a denial, thereby permitting an inmate to appeal the absence of a timely response. This use of the permissive word, "may," strongly suggests that an inmate

is not required to consider the absence of a timely response to be a denial, and thus is not required to appeal the absence of a timely response within a specific time period, if ever, in order to exhaust administrative remedies. *See O'Connor v. Featherston*, No. 01 Civ. 3251 (HB), 2002 U.S. Dist. LEXIS 7570, at *5-6 (S.D.N.Y. Apr. 29, 2002) ("[S]everal courts have held that an inmate may nonetheless defeat a motion to dismiss even when the requirements of administrative remedies have not technically been exhausted where . . . the state's time to respond to the grievance has expired." (citations omitted)).

Third, Dr. Beaudouin asserts that a "close review" of the Regional and Central Office Administrative Remedy Appeal forms accompanying plaintiff's original complaint demonstrates that plaintiff "is complaining about the treatment (or lack thereof) that he was receiving at the [Metropolitan Correctional Center] in October 2007 and not the treatment he received a year earlier at the MDC." (Beaudouin Mem. at 11.) Both appeal forms, however, reference a prior "internal surgery" related to "colon cancer" - presumably a reference to the November 2, 2006 TURBT procedure - and the Regional Administrative Remedy Appeal form further states that plaintiff "was brought to an outside hospital for colon cancer" and that an "[i]nternal surgery was done improperly. Not only is the cancer back, but they operated incorrectly damaging my kidneys." (Complaint at 8-9.) Both

19

appeal forms also allege violations of the Fourteenth Amendment for denial of medical treatment to plaintiff. (*Id.*) Plaintiff testified at his deposition that he did not think he filed any other complaints or administrative remedy forms about conditions in the prison, apart from his complaint that he filed with various institutions about medical treatment in this case. (Urena Dep. Tr. at 31.) Although plaintiff also refers in the appeal forms to the fact that a physician's assistant told him on October 1, 2007 that no hospital would admit plaintiff due to a malpractice suit, the court, resolving all reasonable inferences and ambiguities in favor of the nonmoving party, finds that the appeal forms are at least partly related to plaintiff's treatment at MDC and his surgical operations in November 2006.

Fourth, Dr. Beaudouin contends that "the Court too quickly dismisses plaintiff's initial admission that he did not exhaust his administrative remedies in this case." (Beaudouin Mem. at 11.) As previously noted, however, special solicitude must be afforded to *pro se* litigants, *Graham*, 848 F.2d at 344, particularly when determining whether to bind a *pro se* litigant to statements in a submission where there is contrary evidence in the record. The admission referenced by Dr. Beaudouin was included in plaintiff's response to a discovery motion dated December 3, 2009 (*see* ECF No. 57, Motion to Compel/Response at 2), prior to which plaintiff alleged in his original complaint

that he filed a grievance via a BP-8 form at MDC in 2006 and that
he did not receive a response from MDC (*see* Complaint ¶ IV(F)).
As noted above, plaintiff also attached the Regional and Central
Office Administrative Remedy Appeal forms to his original
complaint prior to the December 3, 2009 admission.  (*Id.* at 8-9.)
Dr. Beaudouin's claim that plaintiff only "began to advance
arguments that he did not receive a response to his BP-8" after
defendants moved for summary judgment (Beaudouin Mem. at 11) is
thus factually inaccurate.

        Further, it is well-settled in the Second Circuit that
"the statutory requirement to exhaust administrative remedies
under the PLRA d[oes] not affect a court's jurisdiction to hear
the case," and "a litigant's failure to exhaust in the PLRA
context is an affirmative defense that can be waived."  *Paese v.
Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 445 (2d Cir.
2006) (citations omitted).  Moreover, the Second Circuit has
recognized that "there are certain 'special circumstances' in
which, though administrative remedies may have been available . .
., the prisoner's failure to comply with administrative
procedural requirements may nevertheless have been justified."
*Giano v. Goord*, 380 F.3d 670, 676-78 (2d Cir. 2004) (finding that
plaintiff's reasonable interpretation of prison regulations
constituted such "special circumstances").  Because there are
genuine disputes of material fact regarding whether plaintiff

exhausted his administrative remedies, the court need not address at this time whether there are any "special circumstances" justifying plaintiff's purported failure to exhaust his administrative remedies, as asserted by Dr. Beaudouin as part of his affirmative defense.

Accordingly, the court finds that Dr. Beaudouin has not established on reconsideration that there is any basis to disturb the court's conclusion in *Urena I* that genuine disputes of material fact exist as to whether plaintiff exhausted his administrative remedies.

## CONCLUSION

Because Dr. Beaudouin does not present on reconsideration an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice, *Cordero v. Astrue*, 574 F. Supp. 2d 373, 379-80 (S.D.N.Y. 2008), the court denies Dr. Beaudouin's motion for partial reconsideration of the court's denial of summary judgment on plaintiff's *Bivens* claim. The parties shall contact Magistrate Judge Bloom by April 19, 2012 for the scheduling of a settlement conference. The defendant

shall serve a copy of this Memorandum and Order on the *pro se*
plaintiff by April 9, 2012 and file a certificate of service by
April 10, 2012.

**SO ORDERED.**

Dated:      April 6, 2012
            Brooklyn, New York

                                _____/s/_____
                                KIYO A. MATSUMOTO
                                United States District Judge
                                Eastern District of New York

23